UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JORGE EDUARDO MOSQUERA ESTUPIAN,

v.                                    Case No. 8:04-cr-238-T-17TBM
                                               8:07-cv-507-T-17TBM
UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Mosquera Estupian's 28 U.S.C. § 2255, motion

to vacate, set aside, or correct an allegedly illegal sentence.   D-372; D-cv-1.[1]   The

Government filed a response, and Mosquera Estupian filed a document entitled "Motion for

Considering Participating Role under Hardship" which the Court construed as a reply. D-cv-

5, 6)  A review of the record demonstrates that the motion to vacate must be **denied**.

Procedural Background

In May 2004, a grand jury in the Middle District of Florida returned an indictment

charging Mosquera Estupian with possessing with intent to distribute at least five kilograms

of cocaine on board a vessel subject to United States jurisdiction, in violation of 46 U.S.C.

app. § 1903(g) and 21 U.S.C. § 960(b)(1)(B)(ii), and conspiracy to do the same, in violation

of 46 U.S.C. app. § 1903(j) and 21 U.S.C. § 960(b)(1)(B)(ii). D-1. Mosquera Estupian pled

---

[1] Court documents in Criminal Case NO. 8:04-238--T-17TBM are referred to as "D-" and the appropriate docket number.  Court documents filed in Civil Case No. 8:07-cv-507-T-17TBm are referred to as "D-cv" and the appropriate docket number.

guilty as charged without a written plea agreement. D-136, 145, 265. This Court sentenced him to 168 months' imprisonment, to be followed by sixty months' supervised release. D-216. 221, 278.

Mosquera Estupian appealed the judgment and conviction (Appeal No. 05-14021-II) (Copy of unpublished case attached to the Government's response), challenging this Court's failure accord him a minor role determination and its determination that Mosquera Estupian acted as a Captain for purposes of USSG § 2D1.1(b)(2)(B). The Eleventh Circuit rejected Mosquera Estupian's claims and affirmed his judgment and sentence. D-318. Mosquera Estupian did not file a petition for certiorari with the Supreme Court.

Mosquera Estupian timely filed the instant motion on March 26, 2007, alleging the following: 1) A Fourth Amendment violation occurred when the U.S. Coast Guard boarded Mosquera Estupian's vessel; 2) this Court failed to award him a minor role determination at sentencing resulting in violations of the Fourth, Fifth, and Sixth Amendments; and 3) this Court improperly enhanced his role under USSG § 2D1.1(b)(2)(B) as a Captain based on other crew members' statements, also resulting in violations of the Fourth, Fifth, and Sixth Amendments. D-cv-1 at 4-7; D-cv-2 at 3-8.

Factual Background

In May 2004, United States Coast Guard (hereinafter "USCG") personnel spotted a suspicious fishing vessel in the Pacific Ocean west of the Galapagos Islands. Presentence Report ("PSR") ¶ 6. Upon approaching the vessel, they observed a life raft in the water and the crew donning life jackets and yelling for help. PSR ¶ 7. Upon boarding the vessel, the Coast Guard personnel found that the scuttling valves on the boat were open, allowing water to enter the boat. PSR ¶ 7. After closing the valves and pumping

2

water off the boat with the boat's own functioning pump, Coast Guard personnel found a hidden compartment covered with fresh plaster that contained more than four tons of cocaine. PSR ¶¶ 7, 11.

The Coast Guard arrested all eight crew members on the boat, including Mosquera Estupian. PSR ¶ 13. Subsequent investigation confirmed that each crew member was aware that he was transporting cocaine and had assisted either in preparing the hidden compartment for the cocaine and/or loading the cocaine into the compartment and sealing it. PSR ¶ 14. The manifest of the boat identified Mosquera Estupian as the boat's captain and another crew member as the boat's engineer. PSR ¶ 13.

At Mosquera Estupian's plea hearing, when the magistrate judge taking the plea asked Mosquera Estupian whether anyone had threatened him to make him enter his plea, Mosquera Estupian answered that "Mr. Romario . . . told me that I had . . . to accept guilt as the captain being that he was in charge of everything; that if I did not accept, we would find out about it further along." D-265 at 24. He then explained that Mr. Romario was "[a] member of the crew, . . . and he was the person in charge of everything, the whole operation. He had documents as a . . . sailor." Id. Later, Mosquera Estupian's counsel clarified that Mosquera Estupian had been trying to explain that, at some point during the boat's trip, "two of the Col[o]mbians charged in this case . . . substituted their roles . . . [Mosquera Estupian] . . . was the original captain but . . . not the captain now because someone on board took over." See D-265 at 29 (Mosquera Estupian's co-defendant's counsel gives this explanation of Mosquera Estupian's concern and Mosquera Estupian's counsel agrees that that was indeed Mosquera Estupian's concern). Mosquera Estupian also stated that, upon discovering the boat's manifest, "they knew who the captain was[.]"

3

D-265 at 31.

At sentencing, Mosquera Estupian objected to the absence of a reduction in his base offense level under USSG §3B1.2 for a "mitigating role" and to the probation office's recommendation that the court increase his base offense level by two pursuant to USSG §2D1.1(b)(2)(B) for acting as a "captain" aboard the boat. D-278 at 10-11. Mosquera Estupian's counsel confirmed that Mosquera Estupian had been the "only licensed mariner" aboard the boat and was "technically a licensed sea captain," but argued (as had been explained at the plea hearing) that, nonetheless, Mosquera Estupian should not be subject to enhancement because he had captained the boat only until several Colombians had arrived in another vessel with the shipment of cocaine for transfer, at which time he had relinquished his authority as captain and allowed another of his co-defendants to give directions to the boat's crew. D-278 at 19-23.

This Court overruled Mosquera Estupian's objections, stating that Mosquera Estupian had played a critical part in the conspiracy to possess the cocaine because he had captained the boat "through coordination and coordinates at sea, [to meet the Colombians] at a specific location" to transfer the cocaine in furtherance of the conspiracy. D-278 at 23. The court also found that "insofar as the captain's responsibility . . . [Mosquera Estupian had] captained the vessel to get it to the appropriate navigational coordinates," and that his voluntary relinquishment thereafter did not allow him to avoid a captain's enhancement. D-278 at 24-25. The court also noted that "trying to make distinctions [among the persons on the boat regarding relative role], which common sense will tell you cannot be justified, would be an insult to your intelligence." D-278 at 24.

Mosquera Estupian at no time argued or even implied that he had not acted as

4

captain of the boat before the Colombians arrived with the conspirators' cocaine shipment. See D-278. He did not object to this Court's finding that, as he argued, he had captained the boat until the transfer but had relinquished his captain's authority thereafter. See D-278.

Discussion

Sentencing Determinations

Mosquera Estupian argues in his motion that this Court erred in calculating his sentence under the sentencing guidelines because this Court : (1) failed to consider the sentencing factors under 18 U.S.C. § 3553 by admitting hearsay evidence and denying his minor role request, Ground Two at D-cv-1 at 5, D-cv-2 at 4, 7-8 and (2) determined his role was that of a captain under USSG §2D1.1(b)(2)(B), Ground Three at D-cv-1 at 7, D-cv-2 at 3-4, 7-8. Mosquera Estupian alleges both grounds are violations of the "Fifth, Sixth[,] and Fourth Amendments" but otherwise fails to demonstrate how the sentencing determinations support his claims as constitutional error. D-cv-2 at 4. Mosquera Estupian's arguments that this Court misapplied the sentencing guidelines are not cognizable in a section 2255 proceeding. Merely calling the claims Fourth, Fifth, and Sixth Amendment violations without further elaboration does not make these claims rise to the level of constitutional error. These claims are not cognizable under 28 U.S.C. § 2255.

Collateral review pursuant to 28 U.S.C. § 2255 is not a substitute for direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998) (citing *Sunal v. Large*, 332 U.S. 174, 178 (1947)). Non-constitutional claims can be raised on collateral review only when the alleged error constitutes a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed*

5

*v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). An allegation that a given sentence is contrary to the sentencing guidelines is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice. *See Burke*, 152 F.3d at 1331-32 (collecting cases); see also *United States v. Diaz-Clark*, 292 F.3d 1310, 1316 n.4 (11th Cir. 2002) (expressing doubt whether claim concerning sentencing guidelines misapplication would be cognizable even if not successive).

Mosquera Estupian's arguments that his sentencing guidelines were inappropriately calculated are supported only by challenges he has previously asserted to the Eleventh Circuit referencing this Court's determination of his role in the offense. To the extent that he has articulated any further legal argument, Mosquera Estupian has not raised any constitutional issue, and he has not claimed that any error in this case (assuming that there is one) constituting a "'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed,* 512 U.S. at 348.

Mosquera Estupian's arguments have no merit. In these circumstances, Mosquera Estupian cannot establish that any alleged misapplication of the sentencing guidelines was fundamentally unfair or that it constituted a miscarriage of justice sufficient to form the basis for collateral relief. *See Burke*, 152 F.3d at 1331-32.

<u>Fourth Amendment Claim</u>

In Ground One of his motion, Mosquera Estupian complains of a Fourth Amendment violation in that his "conviction [was] obtained by [the] use of evidence obtained pursuant

6

to an unlawful arrest." D-cv-1 at 4; D-cv-2 at 3-7. This claim is also not cognizable in this motion to vacate. Fourth Amendment violations are not cognizable on collateral review as long as the defendant had a "full and fair" opportunity to litigate the claim on direct appeal. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) ("where the State has provided an opportunity to full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial");[2] *see also, United States v. Ishmael*, 343 F.3d 741, 742-43 (5th Cir. 2003) (citing *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993)) ("[I]t is clear that the [Supreme] Court intends for Fourth Amendment claims to be limited in § 2255 proceedings as they are limited in § 2254 proceedings–i.e., to be addressed only if a defendant has not had a full and fair opportunity to raise the claims at trial and on direct appeal); *compare, Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) ("But the applicability of Stone in § 2255 proceedings is somewhat unclear. While the Supreme Court has not definitively resolved the question, dicta in *United States v. Johnson*, 457 U.S. 537, 562 n.20 (1982) indicates that the doctrine does apply here.").

Here, Mosquera Estupian's contentions that the government "never proved that the fishing boat" *Don Enrique* was in violation of the law and lacked "probable cause to stop or board the vessel"; and that this Court "never proved that the United States had the right[s] or jurisdiction of the vessel" *Don Enrique* are waived by failing to challenge to this Court's jurisdiction over his person by failing to assert it pre-plea or on direct appeal. D-cv-1

---

[2] The Supreme court has made clear that *"Stone's* restriction on federal habeas review of Fourth Amendment claims" does not extend to "Sixth Amendment ineffective- assistance-of-counsel claims which are founded primarily on incompetent representation with respect to Fourth Amendment issue." *Kimmelman v. Morrison*, 477 U.S. 365, 375-83 (1986).

at 4. Furthermore, this Court had jurisdiction over Mosquera Estupian's person because a grand jury had indicted him and he had been brought before this Court on those charges.

Insofar as Mosquera Estupian argues that this Court's exercise of jurisdiction over him violated due process or that Congress lacked the authority to enact the Maritime Drug Law Enforcement Act ("the MDLEA"), his arguments are precluded by binding precedent. *See United States v. Estupinan*, 453 F.3d 1336, 1339 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 1486 (2007) (Congress did not exceed its authority in enacting the MDLEA); accord *United States v. Vargas-Medina*, 203 Fed. Appx. 298, *2 (11th Cir. 2006), *cert. denied,* 127 S.Ct. 3062 (2007).

The MDLEA's requirement that the vessel be subject to the jurisdiction of the United States defines the United States' extra-territorial jurisdiction and not the subject matter jurisdiction of federal courts. The subject matter jurisdiction of the federal courts is defined by 18 U.S.C. § 3231. Because the requirement that the "vessel" be "subject to the jurisdiction of the United States" is not one of subject matter jurisdiction, Mosquera Estupian waived this argument by pleading guilty, and, in any event, it has no merit. Mosquera Estupian's guilty plea prevents his raising a Fourth Amendment claim, and in any event, the Fourth Amendment argument is not cognizable as he never previously raised this claim pre-plea or on direct appeal. Because Mosquera Estupian does not raise this Fourth Amendment claim in the context of the Sixth Amendment, he therefore, has failed to establish that his claim is cognizable.

Prior Resolution

Mosquera Estupian argues that he is entitled to a minor role reduction because this Court erred in calculating his sentence under the sentencing guidelines by failing to

consider the sentencing factors under 18 U.S.C. § 3553 and by admitting hearsay evidence, Ground Two at D-cv-1 at 5, D-cv-2 at 4, 7-8 and wrongly determined his role was that of a captain under USSG §2D1.1(b)(2)(B), Ground Three at D-cv-1 at 7, D-cv- 2 at 3-4, 7-8. Mosquera Estupian is not entitled to review of this claim, however, because the Eleventh Circuit already has decided it. "Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court will not reconsider an issue already decided on direct appeal). The Eleventh Circuit squarely reviewed Mosquera Estupian's role in the offense and stated:

> Estupian unsuccessfully argues that he had a very minor role simply carrying out his superior's orders in an extremely complex narcotics distribution scheme involving many individuals higher than himself on the chain of command. The 4.6 tons of cocaine found on the vessel weighs heavily against concluding that Estupian played a minor role. See [*United States v. De Varon*, 175 F.3d 930,] at 943 [(11th Cir. 1999) (en banc)]. Other considerations also indicate that Estupian played at least an average role: (1) Estupian was one of only eight crew members onboard the vessel when the Coast Guard found it; (2) the vessel's manifest identified Estupian as the captain; (3) Estupian was aware that the vessel was transporting cocaine and participated actively in either preparing the hidden compartment for the cocaine or loading the cocaine; and (4) Estupian, at the very least, captained the vessel on its journey to rendezvous with the Colombians in order to obtain the cocaine. For these reasons, Estupian was, at the very least, an average participant in the criminal act, and, accordingly, we affirm as to this issue.

2. Captain Enhancement

Estupian also argues that there was insufficient evidence for the district court to conclude that he was the captain of the vessel for purposes of a U.S.

Sentencing Guidelines Manual § 2D1.1(b)(2)(B) enhancement. Specifically, Estupian argues that the only evidence in support of that finding was: (1) the vessel manifest identifying him as the licensed captain; and (2) his testimony that he was the captain, which, he argues, should not have been considered because he stated, during the plea colloquy, that he had been pressured to come forward as the captain. With regard to the vessel manifest, Estupian argues that our precedent precludes a § 2D1.1(b)(2)(B) enhancement based on title alone when he was not acting as the captain.

Regarding the enhancement under § 2D1.1(b)(2)(B), we review a district court's finding of fact for clear error and its application of the guidelines de novo. *United States v. Rendon*, 354 F.3d 1320, 1329 (11th Cir. 2003). A defendant's conduct warrants a two-level increase if "the defendant acted as a . . . captain . . . or any other operation officer aboard any . . . vessel carrying a controlled substance . . . . " U.S. Sentencing Guidelines Manual § 2D1.1(b)(2)(B). The guideline does not define the term "captain." However, in *Rendon*, we declined to adopt a rigid definition of "captain," and declined to create one. *Rendon,* 354 F.3d at 1329. We then adopted the reasoning of a First Circuit case which rejected a defendant's argument that, because the substantive crime was not completed, he could not qualify for a § 2D1.1(b)(2)(B) enhancement. *Id.* at 1330. We noted the § 2D1.1(b)(2)(B) enhancement "addresses those who facilitate a drug smuggling operation by filling a critical position without which the operation likely would fail." *Id.* at 1334.

Even if Estupian abdicated his role as captain to one of the Columbians with whom he rendezvoused, because Estupian admittedly captained the vessel during the course of the conspiracy and guided the vessel to its rendezvous point to pick up the cocaine, the district court did not err in applying the § 2D1.1(b)(2)(B) enhancement. Upon review of the record, and consideration of the briefs of the parties, we find no reversible error.

*Mosquera Estupian*, 173 Fed. Appx. 779, at *1-2. Further review of Mosquera Estupian's role is not warranted as this claim has been considered by the Eleventh Circuit and resolved against him.

### PROCEDURAL DEFAULT

Mosquera Estupian is not entitled to relief on his claim that his Fourth Amendment rights were violated (Ground One) because he has procedurally defaulted this claim. Ordinarily, claims that previously were available and were not raised in a prior proceeding

10

are procedurally defaulted and barred from consideration on collateral review. *See Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152, 166 (1982); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). When a defendant raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause and actual prejudice resulting from the error or actual innocence to excuse the defaults. *McCoy*, 266 F.3d at 1258-59. To show cause for not raising a claim in an earlier proceeding, a Petitioner must show "some external impediment preventing counsel from constructing or raising the claim." *See High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000) (quoting *McCleskey v. Zant*, 499 U.S. 467, 497 (1991)). To establish prejudice, the Petitioner must prove that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *See Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal quotations omitted). This is a heavier burden than the burden of establishing plain error on appeal. *See Frady*, 456 U.S. at 164. The futility of raising a claim does not constitute sufficient cause to excuse the default. *Bousley*, 523 U.S. at 623; *Jones v. United States*, 153 F.3d 1305, 1307-08 (11th Cir. 1998).

Procedural default bars Mosquera Estupian's claim that the USCG lacked probable cause to board his vessel due to misidentification with another fishing vessel leading to a Fourth Amendment violation. Mosquera Estupian failed to raise this claim with this Court prior to judgment in his criminal case or on direct appeal. Thus, Mosquera Estupian is not entitled to relief because he has procedurally defaulted his claim.

In order to show sufficient cause for the procedural default, a petitioner must present a showing of some external impediment preventing counsel from constructing or raising the

claim. *Weeks v. Jones*, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S 467 (1991)). The futility of raising a claim does not constitute sufficient cause to excuse the default. *Bousley*, 523 U.S. at 623; Jones, 153 F.3d at 1307-08; Nor do ordinary mistakes of counsel constitute cognizable cause. *See Murray*, 477 U.S. at 487-88.

"Actual prejudice" is prejudice that impacts constitutional or fundamental rights. *Frady*, 456 U.S. at 166 (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). The burden of demonstrating actual prejudice is greater than the burden of demonstrating plain error. *Id.*

In Ground One, Mosquera Estupian asserts his cause for failing to raise this issue concerning his arrest is that he discussed the facts leading to his arrest with his attorney and the attorney "did not understand how presenting these facts to the Court would help petitioner in his appeal stage." D-cv-1 at 4. However, even if Mosquera Estupian can demonstrate cause, he fails to show any resulting prejudice. Mosquera Estupian's attorney did not perform deficiently by failing to litigate this claim because the claim lacks merit. Moreover, Mosquera Estupian has not alleged any specific prejudice, much less proved that his cursory assertion that his attorney's failure to agree with his assessment of the facts leading to his arrest worked to his actual and substantial disadvantage.

Mosquera Estupian's conclusory assertions in Ground One that the fishing vessel *Don Enrique* did not violate any law and the USCG lacked any rights or jurisdiction over the vessel fails to assert a cause or demonstrate the resultant prejudice–other than his conviction. D-cv-2 at 4. Mosquera Estupian's unsupported assertion that his arrest was unlawful without providing this Court with any details as to why he believes this contention is conclusory and lacks merit. Thus, Mosquera Estupian's claim is procedurally barred.

## WAIVER

It is well established that a voluntary, unconditional guilty plea waives all nonjurisdictional challenges to the constitutionality of the conviction that arose prior to the plea. *See, e.g., Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (guilty plea waives pre-plea ineffective assistance of counsel claim in a section 2255 proceeding); *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (guilty plea waives speedy trial and due process challenges in a section 2255 proceeding; collecting cases); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979) (guilty plea waives claims regarding *Miranda* warnings, coerced confessions, perjury, and illegal searches and seizures in a section 2255 proceeding).

Mosquera Estupian has waived the right to appeal his sentence, directly or collaterally, concerning his arrest (Ground One) by pleading guilty and not raising such a challenge prior to the entry of his guilty plea. Mosquera Estupian has waived this argument both by failing to timely assert it and by his unconditional guilty plea.

## ADDITIONAL COMMENTS ON THE MERITS OF GROUND ONE

As discussed above, Mosquera Estupian's bare-bones Fourth Amendment challenge that his "conviction [was] obtained by [the] use of evidence obtained pursuant to an unlawful arrest" fails to demonstrate how his arrest was anything but lawful and fails to state how this affected the outcome of the plea process resulting in his conviction. D-cv-1 at 4; D-cv-2 at 3-7.

The Sixth Amendment right to counsel is the right to effective assistance of counsel.

*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 694. "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Thus, if the defendant fails to show that he is prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *See Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Furthermore, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that

14

counsel's performance was unreasonable." *Chandler*, 218 F.3d at 1313. This burden of persuasion, though not insurmountable, is a heavy one. *See id.* at 1314. "'Judicial scrutiny of counsel's performance must be highly deferential,'" and courts "must avoid second-guessing counsel's performance." *Id.* at 1314 (quoting *Strickland*, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. *See Chandler*, 218 F.3d at 1314-15 n.15. Thus, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.* Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Chandler*, 218 F.3d at 1315. For a Petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." *Id.* To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16. Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Id.* at 1317.

Mosquera Estupian's conclusory statements that the government "never proved that

the fishing boat" *Don Enrique* was in violation of the law and lacked "probable cause to stop or board the vessel"; and that this Court "never proved that the United States had the right[s] or jurisdiction of the vessel" *Don Enrique* are factually inaccurate and contradicted by the admissions he made at the plea colloquy. D-cv-1 at 4.

In establishing the factual basis for the plea the government stated the *Don Enrique* "by virtue of it's position in international waters in the Pacific Ocean . . . was subject to the jurisdiction of the United States." D-265 at 8. Initially, the USCG had been tracking another boat, the *Lati*, in international waters. Id. at 8-9. USCG personnel tracking the Lati became concerned that crewmembers would scuttle or sink that vessel and invoked a bilateral agreement with Columbia through its Navy. Id. at 9. Traveling to the *Lati*, USCG personnel became aware that the crew had donned life jackets and positioned life rafts while "yelling for help" so for safety reasons, the USCG boarded the vessel. Id. at 9-10. While onboard, USCG personnel ascertained the vessel was an Ecuadoran vessel, the *Don Enrique*. Id. at 10-11. At that point, law enforcement activity ceased while the USCG contacted Ecuador for authorization to search the *Don Enrique* and its crew which was later granted. Id. at 11. Mosquera Estupian agreed to these facts. Id. at 12. The Court reviewed with Mosquera Estupian his right to a trial, to bring witnesses, and to "try to keep out any evidence [you] didn't think was admissible" or he "could tell your side of the story." Id. at 21. Mosquera Estupian agreed to plead guilty "knowing that there are certain requirements within the government" but he was pleading guilty because he agreed "that [he] was guilty of having committed the offense because I was found with merchandise on the vessel" and that he was indeed "guilty of the charge." Id. at 21-22. Mosquera Estupian further agreed that no one had promised him anything in return for his plea, threatened him or his family, and that

16

he was satisfied with his counsel's representation. Id. at 23-27. The Court in questioning

Mosquera Estupian's description of how the *Don Enrique* was flagged told him:

> Okay. Mr. Estupian, one final point, the government in this case claims that they had the authority to act in boarding that vessel [seizing] the cocaine and arrest[ed] you. You draw some distinctions about whether or no your vessel was flagged or not.
>
> If you go forward with the guilty plea, you're going to give up any issue about whether the government had the right to act in this case; you understand that?

Id. at 33. Mosquera Estupian answered that he was merely stating any disagreement with

the facts as asked by the Court and the Court further inquired:

> Okay. I'm not being critical but the government–the United States government only has the right to act out in the Pacific, west of the Galapagos, under certain circumstances which, quite frankly, are beyond my comprehension but I just want to make sure that you're not attempting to reserve some type of jurisdictional argument here.

Id. at 34. To which Mosquera Estupian replied:

> No, there is no dispute with that.

Id. After which the Court found the plea to be knowing and voluntary. Id. at 35-36.

Furthermore, Mosquera Estupian argues that he spoke with his attorney concerning

the facts surrounding his arrest and "counsel did not understand how presenting these facts

to the Court would help petitioner in his appeal stage." D-cv-1 at 4. Insofar as this

statement can be construed as a claim of ineffective assistance of counsel constituting

cause under *Strickland*, Mosquera Estupian fails to demonstrate the resulting prejudice.

Because he entered a guilty plea without preserving any issues for appeal, Mosquera

Estupian would not have had any basis to appeal his conviction. *See United States v.*

*Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (defendant's unconditional guilty plea, made

knowingly, voluntarily, and with benefit of competent counsel, waives all non-jurisdictional defects in defendant's proceedings). Mosquera Estupian has not identified any evidentiary defect concerning arrest that resulted in a Fourth Amendment violation affecting his conviction that he would have raised pre-plea or on appeal. His statements alleging the USCG lacked probable cause to board the *Don Enrique* are unsupported by the admissions he made during the plea colloquy and by the facts. To the extent Ground One can be construed as alleging ineffective assistance of counsel, he has failed to allege and prove cause and prejudice under *Strickland*.

In any event, Mosquera Estupian's claims that his Fourth Amendment rights were violated are conclusory and insufficient to entitle him to relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (no evidentiary hearing required when claims are merely conclusory Allegations unsupported by specifics or contentions that in the face of the record are wholly incredible); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (conclusory statements are insufficient to establish a constitutional claim). Mosquera Estupian's conclusory statements of an unconstitutional violation are not supported by any evidence in the record. Thus, he has failed to meet his burden. Any nonjurisdictional Fourth Amendment claim Mosquera Estupian may have had was waived by his guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 261-67 1602 (1973). Consequently, Mosquera Estupian's Fourth Amendment claim under Ground One lacks merit and does not address the cause nor prejudice standard enunciated in *Strickland*.

Accordingly, the Court orders:

That Mosquera Estupian's motion to vacate (D-372; D-cv-1) is denied.  The Clerk is directed to enter judgment against Mosquera Estupian in the civil case and to close that

case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 6, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Kathy J. M. Peluso
Jorge Eduardo Mosquera Estupian

19